IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KAREN J. WESTMORELAND, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:16-CV-447 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

### REPORT AND RECOMMENDATION

Plaintiff Karen J. Westmoreland ("Westmoreland") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Westmoreland alleges that the ALJ failed to assess her impairments on a function-by-function basis and failed to provide sufficient reasons for the credibility analysis. I conclude that substantial evidence supports the ALJ's decision as a whole. Accordingly, I **RECOMMEND DENYING** Westmoreland's Motion for Summary Judgment (Dkt. No. 14), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 16).

### STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Westmoreland failed to demonstrate that she was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted

1

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

Westmoreland filed for DIB on June 21, 2012, claiming that her disability began on March 1, 2011. R. 15. The Commissioner denied the applications at the initial and reconsideration levels of administrative review. R. 78–96. On January 14, 2015, ALJ Benjamin R. McMillion held a hearing to consider Westmoreland's disability claim. R. 28–49. Westmoreland was represented by an attorney at the hearing, which included testimony from Westmoreland and vocational expert Gerald Wells. Id.

On March 19, 2015, the ALJ entered his decision analyzing Westmoreland's claim under the familiar five-step process,[2] and denying Westmoreland's claim for benefits. R. 15–22. The ALJ found that Westmoreland suffered from the severe impairments of polyarthralgia, rotator cuff tendinitis/bursitis, mild chronic obstructive pulmonary disease ("COPD"), and chronic diarrhea. R. 17. The ALJ found that these impairments did not meet or medically equal a listed

---

or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

impairment. R. 19. The ALJ further found that Westmoreland had the residual functional capacity ("RFC") to perform light work, except that she: (1) can sit, stand, and walk for six hours in an eight-hour workday; (2) can balance an unlimited amount; (3) can frequently stoop; (4) can occasionally climb, kneel, crouch, and crawl; (5) can occasionally reach overhead; (6) must avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, and hazards; and (7) requires proximity to a restroom as can be found in a business office, retail store, or similar setting. Id. The ALJ determined that Westmoreland is capable of performing her past relevant work as a companion, and concluded that she is not disabled. R. 22.

Westmoreland requested that the Appeals Council review the ALJ's decision. On July 25, 2016, the Appeals Council denied Westmoreland's request for review. R. 1–6. This appeal followed.

## ANALYSIS

Westmoreland challenges the ALJ's decision on two grounds, claiming: (1) the ALJ failed to perform a function-by-function analysis when he developed Westmoreland's RFC; and (2) the ALJ failed to provide an explanation regarding her credibility.

**Function-by Function Analysis**

Westmoreland asserts that the ALJ failed to consider how her impairments affect her ability to work on a function-by-function basis. Specifically, Westmoreland argues that the ALJ failed to consider how often she would need to take breaks at work due to her chronic diarrhea.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting the ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-

3

8p. The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Westmoreland reported that her chronic diarrhea began in February 2013. R. 423. In June 2013, Westmoreland underwent a CT scan of her abdomen and pelvis which revealed "[n]o acute CT abnormalities of the abdomen." R. 406. In July 2013, Westmoreland underwent an endoscopy of her colon, esophagus, and rectum, which was normal. R. 410–14, 512. Westmoreland took Lomotil to combat her chronic diarrhea symptoms. R. 418. Jennifer Sinclair, M.D., stated in October 2013 that Lomotil was "working well" and that it resulted in "good control of [her] diarrhea." Id. In January 2014, Richard Brownstein, M.D., prescribed Westmoreland cholestyramine to combat her chronic diarrhea symptoms. Despite findings that

4

prescription medications were working, Westmoreland claimed at the administrative hearing that "[they do not] really help. [They are] not really helping right now." R. 41.

Dr. Brownstein stated that Westmoreland's chronic diarrhea could be the result of fat malabsorption, and advised her to start a low-fat diet. R. 510, 512. However, Westmoreland never followed this low-fat diet, as she continued to eat foods that were high in fat. R. 510. As recent as her administrative hearing, Westmoreland asserted that she has around "six or seven" bowel movements a day, which occurs about four days a week. R. 40–41, 423, 512.

The ALJ provided a detailed summary and analysis of Westmoreland's impairments, medical records, testimony, and opinion evidence. The ALJ discussed Westmoreland's symptoms, her resulting limitations, medical evidence, medical opinions, Westmoreland's testimony, her credibility, and conflicting medical evidence. R. 17–22. The ALJ considered Westmoreland's testimony that she suffered from chronic diarrhea four days a week which "causes her to go to the bathroom six or seven times." R. 20. The ALJ explained how although Westmoreland continues to experience diarrhea, gastrointestinal testing has been largely negative, she has reported control of her symptoms with various medications, and she has failed to follow the recommended low-fat diet. R. 21. The ALJ determined that her chronic diarrhea required that she work in close proximity to a restroom. R. 19, 22.

The ALJ did not find any objective medical evidence to support Westmoreland's claimed frequency of bowel movements and discounted her credibility on this issue. Thus, the ALJ did not have to address the vocational expert's testimony that an individual who requires between four to six bathroom breaks a day would "far exceed [sic] amount of time the person would be allowed to be off task" and would therefore prohibit one from holding employment. R. 47. The ALJ also explained why he gave significant weight to the state agency physician, Joseph

5

Duckwall, M.D., who found that Westmoreland could perform light work with certain additional limitations which he incorporated into the RFC. R. 21–22. No medical expert found Westmoreland incapable of her past work as a home companion. R. 59, 72, 74. The ALJ then discussed Westmoreland's ability to perform sustained work activities on a daily basis and described the amount of each activity she could perform based on the evidence in the case. R. 20–22; see also SSR 96-8p, 1996 WL 374184, at *7.

The Fourth Circuit has rejected conclusory opinions by an ALJ that "fail to assess [the] claimant's capacity to perform relevant functions[] despite contradictory evidence in the record." See Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016) (quoting Mascio, 780 F.3d at 636). Here, the ALJ discussed both the objective medical evidence and Westmoreland's subjective complaints and alleged symptoms. The ALJ incorporated the relevant evidence into his narrative discussion and the resulting RFC and constructed "an accurate and logical bridge" from the evidence in the record to his conclusion. I am not left to guess about how the ALJ arrived at that conclusion. Id. at 189 (quoting Clifford, 227 F.3d at 872). I find that the ALJ satisfied his responsibility under SSR 96-8p, and substantial evidence supports his RFC finding.

**Credibility**

Westmoreland asserts that the ALJ failed to give specific reasons for his finding that Westmoreland's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely credible.[3] Specifically, Westmoreland argues that the ALJ failed to

---

[3] I note that in March 2016, the Social Security Administration superseded the language of SSR 96-7p when it ruled in SSR 16-3p that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." SSR 16-3p at *1. "In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

6

address her "allegations regarding her inability to maintain a static work posture, her difficulty using her left arm, her frequent use of the bathroom due to her chronic diarrhea and her need to lie down at unpredictable intervals due to pain." Dkt. No. 15, at 17.

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Westmoreland's subjective allegations of her disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the record as a whole. 20 C.F.R. § 404.1529. If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weigh them accordingly. See SSR 96-4p; SSR 96-7p.

From March 1–4, 2011, Westmoreland was admitted to Giles Community Hospital following a motor vehicle accident. R. 247. CT scans of her lumbar spine and pelvis showed multiple fractures at the L3-L5 transverse processes and pelvis, with mild disc degeneration in the thoracic spine and moderate-to-severe disc degeneration at the L2 through L5 vertebrae. R. 244–49, 299, 459–62. Sarah Zawodny, M.D., recommended conservative treatment, including a walker and physical therapy, instead of surgery due to the stable nature of the pelvic fractures. R. 451–54.

---

Here, SSR 16-3p was issued after the ALJ's consideration of Westmoreland's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's "credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); Ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D. W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016); Lopez v. Colvin, No. 3:16CV24 (JAG), 2016 WL 6594107, at *4 (E.D. Va. Oct. 13, 2016) (noting "[t]he Agency does not have the power to engage in retroactive rulemaking"). However, I note that the methodology required by both SSR 16-3p and SSR 96-7p, are quite similar. Under either, the ALJ is required to consider Westmoreland's report of her own symptoms against the backdrop of the entire case record. Under SSR 96-7p, this resulted in a "credibility" analysis; under SSR 16-3p, the adjudicator must evaluate "consistency."

Following the accident, Westmoreland began physical therapy at Pulaski Health and Rehabilitation Center on March 4, 2011 and was discharged on March 16, 2011. R. 261. Physical and occupational therapy were successful. R. 261–71, 290–95. Westmoreland also reported no incontinence and normal bowel function. R. 263. Treatment notes from an in-home physical therapy provider in March and April 2011 showed similarly good progress in that Westmoreland was capable of normal gait without use of a walking aid, had increased strength in her hips and legs, and fair balance. R. 272–88. On March 22, 2011, Westmoreland was discharged from in-home physical therapy, as her therapist concluded there was "no further need for skilled [occupational therapy] intervention." R. 288.

In May and June 2012, Westmoreland was treated for pain and rotator cuff tendinitis. R. 315–28. She denied diarrhea, nausea or vomiting. R. 318. X-rays showed Westmoreland's pelvic fractures healed well, and musculoskeletal exams were normal with good strength. R. 315, 319, 326. She had good range of motion with the exception of shoulder raises and some tenderness on external hip raises. R. 315, 319. In August 2012, James Smith, M.D., diagnosed Westmoreland with myofascial pain and gastroesophageal reflux disease. R. 377, 379.

Five months later, in January 2013, Garry Bayliss, M.D., diagnosed Westmoreland with osteoarthritis, lumbar spondylosis, and bilateral rotator cuff tendinitis during a rheumatology consultation. R. 392. Dr. Bayliss recommended shoulder injections and conservative treatment. R. 392–93. In March 2014, Westmoreland was still complaining of left shoulder pain and she received injections in both shoulders, which reduced her pain. R. 502. No doctor limited Westmoreland's activities due to her shoulder pain.

In May 2013, Westmoreland complained of diarrhea to Dr. Smith. R. 397. She was diagnosed with diarrhea and polyarthralgia. R. 398. A CT scan in June 2013 found no acute

abnormalities in Westmoreland's pelvis. R. 406. Jennifer Sinclair, M.D., noted that Westmoreland experiences diarrhea one hour after eating and instructed her to take Imodium. R. 424–25. An endoscopy performed in July 2013 of Westmoreland's colon and esophagus was normal except for mild chronic inflammation of the esophagus consistent with acid reflux. R. 410–14, 417. Westmoreland continued to experience diarrhea in August 2013, reporting some relief from Pepto-Bismal, but no relief from Imodium. R. 423. In October 2013, Westmoreland told Dr. Sinclair that Lomotil helped control her diarrhea. R. 418. Additionally, Dr. Bayliss recommended that Westmoreland try Cholestyramine for her diarrhea, which helped control her symptoms. R. 426, 512.

In January 2014, Dr. Brownstein noted that all of Westmoreland's objective tests were negative, including biopsies and a colonoscopy. R. 512. Dr. Brownstein determined that Westmoreland's stomach issues likely stemmed from poor fat absorption and he recommended a low-fat diet. Id. At a follow-up with Dr. Brownstein in May 2014, Westmoreland reported that medications were not helping and she had not been following a low-fat diet. R. 510.

After summarizing the medical evidence of record as well as Westmoreland's testimony, the ALJ determined that her "statements concerning the intensity, persistence and limiting effects . . . are not entirely credible." R. 20. In reaching this credibility determination, the ALJ relied on evidence of Westmoreland's daily activities as well as a lack of objective medical evidence demonstrating the purported severity in her pain and limitations.

Regarding Westmoreland's shoulder pain, the ALJ noted that she never required surgery, "progressed exceptionally well" through physical therapy, and "experienced pain relief with pharmacological management and injection therapy." Id. Additionally, the ALJ explained that

9

Westmoreland had full range of motion in her joints and full muscle strength when examined in May and June 2012. R. 21.

The ALJ then discussed Westmoreland's diarrhea symptoms, noting that her "gastrointestinal workups have been largely negative." Id. The ALJ explained that Westmoreland reported effective control of her diarrhea symptoms through the use of Lomotil, Pepto-Bismal, and Cholestyramine, despite her repeated failure to follow her treating physicians' recommendation of maintaining a low-fat diet. Id. The ALJ found no objective evidence corroborating Westmoreland's assertions that she must use the bathroom six to seven times a day. R. 19–22.

Finally, the ALJ found that evidence of Westmoreland's daily activities are inconsistent with her claims of disability, specifically, that she must frequently lie down during the day due to extreme pain and has trouble maintaining a static work posture. The ALJ explained that Westmoreland reported light cleaning and reading during the day, watching television, caring for her dog, preparing meals, doing laundry, washing dishes, sweeping, and driving short distances. R. 21. Westmoreland reported shopping at the grocery store every two weeks, paying bills, playing the piano for twenty minutes a day, and going to church on a regular basis. Id. The ALJ concluded that Westmoreland's "self-reported activities of daily living support a finding that she can perform a range of light work." Id.; see Dolfax v. Astrue, 7:09-cv-67, 2010 WL 1488116, at *11 (E.D.N.C. Mar. 18, 2010) (finding that activities of daily living are a highly probative factor in determining the credibility of a claimant's allegations (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986))).

The ALJ found that Westmoreland's statements regarding the severity of her limitations and her pain were not wholly credible because they were not supported by the objective medical

10

evidence, her treatment history, or her daily activities. R. 20–21. The ALJ included in his opinion a detailed consideration of Westmoreland's medical history and her allegations of limitations. I must give great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Consequently, I find that the ALJ's credibility assessment is supported by substantial evidence.

## **RECOMMENDED DISPOSITION**

For the foregoing reasons, I recommend affirming the Commissioner's decision, **GRANTING** the defendant's motion for summary judgment, and **DENYING** Westmoreland's motion for summary judgment.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection, including a waiver of the right to appeal.

Entered:  February 14, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

11